EDDIE VANZANT v. MARK HALL ET AL.
(14120)
(14124)

SHEA, CALLAHAN, COVELLO, BORDEN and F. X. HENNESSY, Js.

Argued March 28—decision released July 23, 1991

*Michael J. Belzer,* assistant attorney general, with whom, on the brief, were *Clarine Nardi Riddle,* then attorney general, and *Charles A. Overend,* assistant attorney general, for the appellant in the first appeal (defendant Second Injury and Compensation Assurance Fund).

*Brian E. Prindle,* for the appellant in the second appeal (named defendant).

*R. Bartley Halloran,* for the appellee in both appeals (plaintiff).

F. X. HENNESSY, J. In these appeals from a decision of the compensation review division the determinative issue is whether the plaintiff was an employee of the defendant within the meaning of the Workers' Compensation Act (act).

The plaintiff, Eddie Vanzant, who was injured while assisting in the construction of a barn for the named defendant, Mark Hall, filed a claim for workers' compensation benefits from Hall. The compensation commissioner conducted a hearing and ordered Hall to pay the plaintiff workers' compensation benefits. Because Hall did not carry workers' compensation insurance, the commissioner ordered the state treasurer, as custodian of the defendant Second Injury and Compensation Assurance Fund (Fund), to pay the award. Hall and the Fund appealed the commissioner's decision to

the compensation review division (review division), which affirmed the commissioner's finding and award and dismissed the appeal. From that decision, Hall and the Fund appealed to the Appellate Court,[1] and we transferred the appeals to this court pursuant to Practice Book § 4023. We reverse the decision of the review division.

The commissioner found the following facts. Hall, who resides in Andover, and conducts a business known as New England Remodeling, telephoned the plaintiff on November 14, 1987, and offered him work completing the construction of a barn at Hall's residence in Andover. The plaintiff accepted Hall's offer and expected to work five or six hours on Sunday, November 15, 1987, and three to four hours a day during the week, at a rate of pay of $18 per hour. On November 15, 1987, while working on the barn under Hall's supervision and control, the plaintiff injured himself when he fell or jumped from a rafter.

The commissioner further found that the plaintiff was an employee of Hall, that the injuries sustained by the plaintiff on November 15 arose out of and in the course of that employment, and that his average weekly wage for his work with Hall was $360 (twenty hours at $18 per hour). On the basis of these findings, the commissioner concluded that the plaintiff was entitled to payment by Hall of all benefits to which he is or may become entitled under the act.

On appeal, Hall claims that the review division improperly affirmed the commissioner's finding that the plaintiff was Hall's employee for two reasons:

---

[1] Appeals to the Appellate Court from decisions of the review division are taken pursuant to General Statutes § 31-301b, which provides: "Any party aggrieved by the decision of the compensation review division upon any question or questions of law arising in the proceedings may appeal the decision of the compensation review division to the appellate court."

(1) the plaintiff was a casual laborer excluded from compensation by General Statutes § 31-275 (5) (B); and (2) the plaintiff failed to qualify for compensation because General Statutes § 31-275 (5) (D) excludes from the definition of employee "any person engaged in any type of service in or about a private dwelling provided he is not regularly employed by the owner or occupier over twenty-six hours per week."[2]

The Fund raises two claims in its appeal. Its first claim, like Hall's second claim, is that § 31-275 (5) (D) excludes the plaintiff from the general definition of employee and thus from coverage under the act. The Fund's second claim is that the review division improperly failed to sustain the Fund's appeal of the commissioner's denial of its motion to correct.

As a preliminary matter, we note that when a decision of a commissioner is appealed to the review division, the review division is obligated to hear the appeal on the record of the hearing before the commissioner and not to retry the facts. *Fair* v. *Peoples Savings Bank,* 207 Conn. 535, 538–39, 542 A.2d 1118 (1988). The commissioner has the power and duty, as the trier of fact, to determine the facts. *Castro* v. *Viera,* 207 Conn. 420, 435, 541 A.2d 1216 (1988). " 'The conclusions drawn by him from the facts found must stand unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them.' *Adzima* v. *UAC/Norden Division,* [177 Conn. 107, 118, 411 A.2d 924 (1979)]." Id. "Our scope of review of the actions of the review division is similarly limited." *DeBarros* v. *Singleton,* 21 Conn. App. 107, 110, 572 A.2d 69 (1990).

---

[2] Hall's claim that the plaintiff's relationship to him was that of independent contractor and not that of employee was raised in his brief but was abandoned at oral argument before this court.

"The entire statutory scheme of the Workers' Compensation Act is directed toward those who are in the employer-employee relationship as those terms are defined in the act and discussed in our cases. That relationship is threshold to the rights and benefits under the act; a claimant . . . who is not an employee has no right under this statute to claim for and be awarded benefits." *Castro* v. *Viera,* supra, 433. Section 31-275 (5) defines "employee" as "any person who has entered into or works under any contract of service or apprenticeship with an employer . . . ." Section 31-275 (5) expressly excludes from this definition in subdivision (B) "one whose employment is of a casual nature, and who is employed otherwise than for the purposes of the employer's trade or business," and in subdivision (D) "any person engaged in any type of service in or about a private dwelling provided he is not regularly employed by the owner or occupier over twenty-six hours per week."

With this background, we first address Hall's claim that the plaintiff is a casual laborer who was excluded from coverage under the act pursuant to § 31-275 (5) (B). An employee who is barred from compensation under our act pursuant to that section is one whose employment is both casual in nature and not for the purposes of the employer's trade or business. *Thompson* v. *Twiss,* 90 Conn. 444, 450, 97 A. 328 (1916). The term "casual employment" as used in the act means occasional or incidental employment, employment without regularity. Id., 451.

Hall argues that although the commissioner found that the plaintiff had accepted Hall's offer of work completing the construction of a barn on Hall's property and expected to work five or six hours on November 15 and three or four hours a day during the week, the commissioner made no finding of any further ongoing

employment relationship or that the work on the barn was a part of Hall's trade or business. Thus, Hall urges this court to return this matter to the commissioner for further proceedings to allow the commissioner to make findings as to whether the plaintiff's work was both casual and for the purposes of Hall's business.

The commissioner's finding and award should contain a recital of facts found, the conclusions reached by the commissioner upon these subordinate facts, the claims of law made by the appellant, the rulings made thereon, and the decision made. *Henderson* v. *Mazzotta,* 113 Conn. 747, 752, 157 A. 67 (1931); see also Regs., Conn. State Agencies § 31-301-3. A motion to correct the commissioner's finding, as provided in § 31-301-4[3] of the Regulations of Connecticut State Agencies, is the proper vehicle to be used when an appellant claims that the commissioner's finding is incorrect or incomplete. We have long held that this motion is not merely a technical requirement and that the failure to file this motion justifies dismissal of an appeal, for if an "appellant claims that the finding is incorrect, the matter should first be called to the attention of the commissioner that he may have an opportunity to supply omitted facts or restate findings in view of the claims made in the motion." *Guerra* v. *W. J. Megin, Inc.,* 130 Conn.

[3] "[Regs., Conn. State Agencies] Section 31-301-4. CORRECTION OF FINDING.

"If the appellant desires to have the finding of the commissioner corrected he must, within two weeks after such finding has been filed, unless the time is extended for cause by the commissioner, file with the commissioner his motion for the correction of the finding and with it such portions of the evidence as he deems relevant and material to the corrections asked for, certified by the stenographer who took it, but if the appellant claims that substantially all the evidence is relevant and material to the corrections sought, he may file all of it so certified, indicating in his motion so far as possible the portion applicable to each correction sought. The commissioner shall forthwith, upon the filing of the motion and of the transcript of the evidence, give notice to the adverse party or parties."

423, 425, 34 A.2d 873 (1943), citing *Atwood* v. *Connecticut Light & Power Co.*, 95 Conn. 669, 112 A. 269 (1921).

Hall claims to have filed a motion with the commissioner to correct his finding and award and moved, pursuant to Practice Book § 4051,[4] for rectification of the record on appeal to include that motion, a copy of which was attached to the motion for rectification. The review division, however, in denying that motion,[5] stated that Hall's motion to correct had never been filed with the

---

[4] "[Practice Book] Sec. 4051·(Formerly Sec. 3082). RECTIFICATION OF APPEAL; ARTICULATION

"A motion for rectification or articulation shall be filed in triplicate with the chief clerk of the supreme court and forwarded by such clerk to the trial judge. The trial judge shall file the ruling on the motion with the chief clerk of the supreme court.

"Any motion seeking corrections in the transcript or the trial court record which depend on proof of matters not of record or seeking an articulation or further articulation of the decision of the trial court shall be determined by the judge of the trial court whence the appeal is taken or the reservation is made. The trial court may make such corrections or additions as are necessary for the proper presentation of the preliminary statement of issues or for the proper presentation of questions reserved; or the trial court may approve a stipulation of counsel that such a correction or addition be made, provided the motion or stipulation is presented before the appeal is ready to be assigned for hearing and only by leave of the supreme court thereafter. The action of the trial judge as regards such a correction or addition may be reviewed by the supreme court under Sec. 4054. Nothing herein is intended to affect the existing practice with respect to opening and correcting judgments and the records on which they are based.

"Corrections made before the record is printed shall be included in it. If the record has been printed, the chief justice may direct the chief clerk of the supreme court to prepare a supplemental printed record, to be printed and distributed in the same way as the original printed record, but in the absence of such a direction the chief clerk of the supreme court shall furnish the justices of the supreme court typewritten copies."

[5] Practice Book § 2021 provides that "[w]ith regard to appeals from the compensation review division, references in the appellate rules to trial court or trial judge shall, where applicable, be deemed to mean the individuals who comprised the panel of the compensation review division which rendered the decision from which the appeal was taken."

commissioner. Furthermore, Hall has not sought review by this court, pursuant to Practice Book § 4054, of the denial of his motion for rectification. Hall's motion to correct is, therefore, not properly before this court.

Hall has not availed himself of the opportunity to have the commissioner's finding and award corrected prior to his appeal of the review division's affirmance of that award and has thereby deprived the commissioner of the opportunity to supply the findings that Hall claims have been omitted. We, therefore, decline to consider Hall's claim that the review division improperly affirmed the commissioner's finding that the plaintiff was an employee under the act given the exclusion in § 31-275 (5) (B) of casual laborers from the act's definition of employee.

Both Hall and the Fund claim that the plaintiff is excluded from the act's definition of employee pursuant to § 31-275 (5) (D) and that the review division improperly affirmed the commissioner's award of benefits to the plaintiff based on the review division's ruling that the construction of a barn is not "any type of service in or about a private dwelling" as contemplated by § 31-275 (5) (D). We agree.

Section 31-275 (5) (D) excludes from the definition of employee "any person engaged in any type of service in or about a private dwelling provided he is not regularly employed by the owner or occupier over twenty-six hours per week." The plaintiff would, therefore, not be entitled to benefits under the act if his construction work on the barn at Hall's residence was a type of service in or about a private dwelling provided he was not regularly employed by Hall over twenty-six hours a week.

In addressing this claim, the review division stated that, despite the commissioner's implied finding that

the claimant's work week was only twenty hours,[6] "the construction of a barn is not the 'any type of service in or about a private dwelling' contemplated by the statute." The review division concluded from the legislative history of § 31-275 (5) (D) that the exclusion provided by that section was intended to refer only to housekeeping, babysitting and gardening chores.

While there is no room for construction of a statute where its language is clear and unambiguous; *Murray* v. *Lopes,* 205 Conn. 27, 33, 529 A.2d 1302 (1987); " '[w]here the words of a statute fail to indicate clearly whether the provision applies in certain circumstances, it must be construed by this court . . . .' *Board of Trustees* v. *Freedom of Information Commission,* 181 Conn. 544, 550, 436 A.2d 266 (1980)." *Zichichi* v. *Middlesex Memorial Hospital,* 204 Conn. 399, 405, 528 A.2d 805 (1987). The rules of statutory construction dictate that this court is to be guided by the language, purpose and legislative history of the statute in question. Id. Given the commissioner's finding that the plaintiff was hired by Hall to assist in the construction of a barn at Hall's residence, his conclusion that the plaintiff was Hall's employee and the claim by Hall and the Fund that the plaintiff is excluded from the act's definition of employee by § 31-275 (5) (D), we conclude that to determine whether the barn construction is "any type of service in or about a private dwelling" for the purpose of applying § 31-275 (5) (D) to this case an examination of the legislative history is required.

Unlike the review division, we do not find support in the legislative history for the conclusion that § 31-275 (5) (D) was intended to refer only to housekeeping, babysitting and gardening chores and does not

---

[6] Paragraph eight of the commissioner's finding stated: "Claimant's average weekly wage is found to be $360.00 (20 hours @ 18.00 an hour) for the Hall job."

include the construction of a barn. In proceedings before the Labor Committee on House Bill No. 2391, which revised our workers' compensation statute and created the exclusion found at § 31-275 (5) (D), Representative J. Tyler Patterson commented: "I would like to address my remarks . . . principally to two of the items in the Bill. First of all, the section . . . which deals with the problem, somewhat up in the air today . . . concerning the babysitter, or the part time domestic employee. And I think the solution to that problem proposed in this Bill is a reasonable and proper one . . . . The babysitter would, so far as it's possible to do in Legislation, be excluded from the provisions of the Act, the part time domestic employee, that is the inside employee we might call her, who is employed for less than 26 hours in any one week, is excluded from the Act, and the yardman, or part time gardener is excluded in effect, if he works for you for only one day per week. I think these are proper provisions. I don't think we need to clutter up our Workmen's Compensation Act or procedures with complete protection for *that type of employment*." (Emphasis added.) Conn. Joint Standing Committee Hearings, Labor Committee, 1961 Sess., pp. 369–70. In the Senate proceedings on the bill, Senator Anthony Miller stated: "The definition of employees is amended to eliminate [from] the provisions of the Act, any person who performs any type of service in or around a private home provided he is not so employed for more than 26 hours per week. This eliminates coverage for babysitters, part-time gardeners, *etc.*, provided such persons are not employed by the owner or occupier more than 26 hours in any one week." (Emphasis added.) 9 S. Proc., Pt. 9, 1961 Sess., p. 2972. In the House of Representatives, the bill's proponent, Representative John Rand, stated: "It excludes any person working around a domestic household, inside or out, who works for that employer less

than 26 hours per week. In other words, after this act becomes effective, you can have a babysitter, or a person helping in the house, or a yardman or a lawn mower for up to a little more than three days a week, without being subject to the act." 9 H.R. Proc., Pt. 7, 1961 Sess., p. 3461.

We find nothing in the statements above to indicate that the legislature intended to exclude from coverage under the act only those persons hired to perform housekeeping, babysitting and gardening chores for the owner or occupier of a private dwelling for under twenty-six hours a week. We view the reference to those specific tasks in the above statements as examples of the type of employment to be excluded from the act, not as an all inclusive list of exclusions. We therefore conclude that the language "any type of service in or about a private dwelling" as used in § 31-275 (5) (D) is not limited by the legislative history to housekeeping, babysitting and gardening chores and that a normal reading of this provision would include the construction of a barn on the premises of a private residence.

The commissioner found that the plaintiff accepted Hall's offer of work completing the construction of a barn at Hall's residence in Andover and that the plaintiff's average weekly wage was $360 (twenty hours at $18 per hour) for the Hall job. Those facts do not support the commissioner's conclusion that the plaintiff is an employee of Hall entitled to benefits under the act, for the plaintiff has been found to be engaged in a service in or about a private dwelling and not regularly employed by the owner over twenty-six hours a week. The plaintiff therefore is excluded from the act's definition of employee by § 31-275 (5) (D). We reverse the decision of the review division and order that the review division sustain the appeal of Hall and the Fund.

Because we find that the plaintiff is not an employee within the meaning of the act and order that the appeal of Hall and the Fund be sustained, we need not consider the Fund's remaining claim that the review division erred in failing to sustain its appeal of the commissioner's denial of the Fund's motion to correct.[7]

The decision of the review division is reversed and the case is remanded to the review division with direction to sustain the appeal and to return the case to the commissioner with the order that the plaintiff's claim for benefits be denied.

In this opinion the other justices concurred.

---

[7] In its motion to correct, the Fund sought correction of the commissioner's findings to address the Fund's claim of law that the plaintiff was excluded from the act's definition of employee pursuant to General Statutes § 31-275 (5) (D).