ROSE CAPEN *v.* GENERAL DYNAMICS CORPORATION/ELECTRIC BOAT DIVISION ET AL.
(13217)
(13218)

FOTI, SCHALLER and FREEDMAN, Js.

Argued March 14—decision released May 30, 1995

*Lucas D. Strunk,* for the appellants (named defendant et al.).

*Philip M. Schulz,* assistant attorney general, with whom, on the brief, were *Richard Blumenthal,* attorney general, and *William J. McCullough* and *Michael Belzer,* assistant attorneys general, for the appellant (defendant second injury fund).

*Nathan Julian Shafner,* with whom were *Matthew Shafner* and, on the brief, *Amy M. Stone,* for the appellee (plaintiff).

FOTI, J. This is an appeal by the defendants General Dynamics Corporation/Electric Boat Division, CIGNA Property and Casualty Company, Aetna Casualty and Surety Company and the second injury fund (defendants) from a decision of the compensation review board affirming in part and reversing in part an award of the workers' compensation commissioner (commissioner) for the second district. The plaintiff is Rose Capen, the widow of Weston Capen.

The commissioner made the following findings that are pertinent to this appeal. The plaintiff and the decedent were married on May 15, 1942. The decedent was an employee of Electric Boat (employer) in Groton from 1952 to 1970 and from 1976 to 1981.[1] On April 28, 1980, the decedent was examined by John Balmes, a physician at the Yale University Occupational Medicine Clinic and diagnosed with asbestosis. The decedent continued to work until his retirement in December, 1981. By December, 1982, his condition had worsened to the point where he had difficulty leaving his home due to shortness of breath. On March 10, 1983, the decedent was examined by Laura Welch, a physician at the Yale University Occupational Disease Clinic. His chest X ray showed pleural plaques and increased interstitial markings consistent with asbestosis. On April 30, 1983, the decedent was admitted to Lawrence and Memorial Hospital with a diagnosis of pneumonia, chronic obstructive pulmonary disease, and asbestosis. When he was in the hospital, a massive bronchial obstruction was discovered. The decedent was referred to Boston University Medical Center, where the obstruction was diagnosed as squamous cell carcinoma or lung cancer. The decedent's condition worsened until September 25, 1983, when he died of metastatic lung cancer.

---

[1] During this time, the employer insured its workers' compensation liability with the defendant insurance companies.

On September 28, 1983, the plaintiff filed a claim for survivor's benefits under the Workers' Compensation Act, General Statutes § 31-306. She claimed that her husband's lung cancer and death were caused by "exposure to asbestos and other carcinogens" while employed at Electric Boat. In support of her claim, two of the decedent's former coworkers testified about the extent of the decedent's asbestos exposure at Electric Boat.[2] The defendants argued that the plaintiff failed to file a notice of claim within one year of the first manifestation of the occupational disease, as required by General Statutes (Rev. to 1983) § 31-294. The notice provisions of the Workers' Compensation Act are now included in General Statutes § 31-294c. They also argued that any liability for compensation should be apportioned to reflect asbestos exposure that allegedly occurred while the decedent was employed by the Bethlehem Steel Company in Quincy, Massachusetts.[3]

The commissioner for the second district issued a finding and award on March 17, 1992. The commissioner found that "Weston Capen's death due to lung cancer was caused by his exposure to asbestos, part of which was at the workplace of the respondent employer and part of which was with the Bethlehem Steel Company." The commissioner further found that the plaintiff filed a timely notice of claim in that she "filed a [n]otice of [c]laim for [c]ompensation in the office of the undersigned within one year of the date of death as required by § 31-294." The commissioner found that 43 percent of the decedent's asbestos

---

[2] John Horvath worked with the decedent at Electric Boat from 1950 to 1968. James O'Neil worked with the decedent at Electric Boat from 1958 to 1976. Both men testified that the decedent worked on submarine overhauls, removing old piping and replacing it with new piping. The asbestos insulation around the piping had to be replaced as well, causing significant amounts of asbestos dust to be released into the air.

[3] The decedent worked for the Bethlehem Steel Company from 1940 to 1952.

exposure occurred while he worked for the Bethlehem Steel Company, an out-of-state employer over which Connecticut has no jurisdiction. The commissioner then apportioned the liability between the two employers, decreasing the plaintiff's award by 43 percent.

The defendants appealed from the commissioner's finding and award to the compensation review board. They argued that the plaintiff's claim for survivor's benefits was not timely filed, thereby precluding the commissioner from exercising jurisdiction over the claim. The plaintiff also appealed from the commissioner's finding and award, arguing that the commissioner incorrectly apportioned liability between the in-state employer and the out-of-state employer. On December 30, 1993, the board issued a decision upholding the commissioner's conclusion that the plaintiff had timely filed the notice of claim for survivor's benefits and reversing the commissioner's reduction of benefits based on the out-of-state asbestos exposure. The defendants appeal from that decision.

On appeal, the defendants claim that the board incorrectly (1) affirmed the commissioner's decision that the plaintiff timely filed her claim under § 31-294 and (2) reversed the commissioner's decision apportioning liability for the work related injury. We affirm the decision of the compensation review board.

I

The defendants claim that the board incorrectly affirmed the commissioner's decision that the plaintiff timely filed her claim under § 31-294. General Statutes (Rev. to 1983) § 31-294 provides in pertinent part: "No proceedings for compensation under the provisions of this chapter shall be maintained unless a written notice of claim for compensation is given within one year from the date of the accident or within three years from the first manifestation of a symptom of the occupational

disease, as the case may be, which caused the personal injury, provided, if death has resulted within two years from the date of the accident or first manifestation of a symptom of the occupational disease, a dependent . . . may make claim for compensation within such two-year period or within one year from the date of death, whichever is later."

The commissioner found that the decedent's death was due to "lung cancer . . . caused by his exposure to asbestos." The decedent's lung cancer was diagnosed in the spring of 1983, and he died on September 25, 1983. The cause of death as stated on the decedent's death certificate was "metastatic lung carcinoma." The plaintiff filed her claim on September 28, 1983, three days after her husband's death. On the basis of these facts, the commissioner concluded that the plaintiff's notice of claim was timely filed under § 31-294. The commissioner found that the decedent died within two years of the first manifestation of a symptom of the occupational disease and that the plaintiff filed her claim within one year from the date of death. The board affirmed those findings and held that the "commissioner properly concluded that the widow's claim filed within one year of the death of the decedent was timely."

The defendants argue that the first manifestation of a symptom of the decedent's occupational disease occurred on April 28, 1980, when the decedent was diagnosed with asbestosis. They argue that he had until the spring of 1981 to file a timely claim for Connecticut workers' compensation benefits, which he failed to do.[4] Since the plaintiff's entitlement to benefits is

---

[4] Shortly after the decedent was diagnosed with asbestosis, he did file a claim for benefits under the Longshore Harbor Workers' Compensation Act, 33 U.S.C. § 901 et seq. The plaintiff is currently receiving benefits under the jurisdiction of that act at a rate of $206 per week.

derivative of the claim of the decedent worker, the decedent's failure to file a claim meant that the plaintiff's right to file for survivor's benefits never accrued. The defendants also contend that since the decedent did not die within two years of the first manifestation of the asbestosis, the commissioner was incorrect in relying on the section of the statute that allows a dependent to file a claim "within such two-year period or within one year from the date of death . . . ." The defendants argue that since the statutory notice requirements were not met, the commissioner and the board should have found that no jurisdiction existed to hear this claim.[5]

In essence, the defendants' argument is that the decedent's occupational disease and cause of death was asbestosis, not lung cancer. They argue that the lung cancer was a result of a progression of the asbestosis, and that the commissioner and the board incorrectly concluded that the lung cancer was a new injury that allowed the plaintiff to file her claim for survivor's benefits.

"In reviewing the factual determinations of the commissioner, the review [board's] scope of review is limited. The review [board] may not disturb the conclusions that the commissioner draws from the facts found unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them." *DeBarros* v. *Singleton*, 21 Conn. App. 107, 110, 572 A.2d 69, cert. denied, 215 Conn. 808, 576 A.2d 538 (1990), quoting *Fair* v. *People's Savings Bank*, 207 Conn. 535, 538–39, 542 A.2d 1118 (1988). " 'Our scope

---

[5] The filing of a timely notice of claim is a condition precedent to liability and a jurisdictional requirement that cannot be waived. *Walsh* v. *A. Waldron & Sons*, 112 Conn. 579, 584, 153 A. 298 (1931); *Cuccuro* v. *West Haven*, 6 Conn. App. 265, 268, 505 A.2d 1, cert. denied, 199 Conn. 805, 508 A.2d 31 (1986).

of review of the actions of the review division is similarly limited. . . . The decision of the review division must be correct in law, and it must not include facts found without evidence or fail to include material facts which are admitted or undisputed.'"' *Borent* v. *State*, 33 Conn. App. 495, 499, 636 A.2d 392 (1994).

The commissioner found that the decedent in this case had been diagnosed with two separate illnesses, asbestosis and lung cancer.[6] Both were the result of his exposure to asbestos. The commissioner found that the actual disabling disease was lung cancer. He specifically found that the decedent's death was "due to lung cancer . . . caused by his exposure to asbestos," and that the first manifestation of a symptom of lung cancer was in the spring of 1983, well within one year of both the decedent's death and the plaintiff's filing of her notice of claim. We have repeatedly held that " '[t]he power and duty of determining the facts rests on the commissioner, the trier of facts." *Fair* v. *People's Savings Bank*, supra, 207 Conn. 539. On the basis of his findings of fact, the commissioner concluded that the notice requirements of § 31-294 had been met. The board affirmed that conclusion. We hold that the decision of the board was correct in law and was firmly based on the record before it.[7]

---

[6] Prior workers' compensation cases have treated asbestosis and lung cancer as separate and distinct occupational diseases. In *Cortes* v. *Allegheny Ludlum Steel Corp.*, 1 Conn. Workers' Comp. Rev. Op. 173 (1982), the claimant developed both asbestosis and lung cancer. The respondent argued that the notice of claim for the lung cancer was untimely because it was filed more than one year after the diagnosis of asbestosis. The review board affirmed the commissioner's conclusion that the disabling disease was lung cancer, "a separate disease from the pleural asbestosis albeit caused by the same asbestos exposure . . . ." Id., 177.

[7] Given our conclusion upholding the finding that the decedent's death was caused by lung cancer that was first manifested in the spring of 1983, we need not address the defendants' argument that a surviving dependent's claim derives from and depends on the underlying claim for benefits brought

## II

Next, the defendants argue that the board improperly reversed the commissioner's decision to apportion liability for the decedent's work related injury. In his finding and award, the commissioner found that the decedent's death was due to lung cancer "caused by his exposure to asbestos, part of which was at the work place of the respondent employer and part of which was with the Bethlehem Steel Company." The commissioner then apportioned the benefit award to reflect this shared liability. He determined that Connecticut had no jurisdiction for 43 percent of the asbestos exposure at work and ordered the defendants to pay the plaintiff 57 percent of the award. This apportionment was presumably based on the length of the decedent's out-of-state employment with Bethlehem Steel Company. In its opinion, the board held that the evidence introduced in the trial court was insufficient to support the apportionment. The board reasoned that "[w]hile three documents in evidence, all reports by medical providers, do refer to that employment, they do not provide [a] sufficient factual basis to support a finding that the decedent was exposed to asbestos while employed in Massachusetts."

The defendants argue that the board incorrectly held that the evidence in question, which consisted of medical reports, was inadmissible hearsay evidence. They argue that the evidence was admissible under the following exceptions to the hearsay rule: (1) the treating physician exception given by our Supreme Court in

by the injured employee during his life. Also, in light of the conclusion that the plaintiff's 1983 claim was timely filed, we need not address the plaintiff's alternative argument that the decedent's 1980 claim under the Longshore Harbor Workers' Compensation Act satisfied the notice requirements of § 31-294.

*Brown* v. *Blauvelt,* 152 Conn. 272, 205 A.2d 773 (1964);[8] (2) the exception that allows admissions of a party opponent;[9] and (3) the statutory exception found in General Statutes § 52-172, which provides an exception for the declarations and memoranda of deceased persons in actions by or against their representatives. The problem with this argument is that our reading of the board's opinion demonstrates that it did not hold that the reports were inadmissible hearsay. Rather, the board concluded that the medical reports, while admissible, were uncorroborated hearsay and did not constitute sufficient evidence to support the commissioner's finding of out-of-state exposure to asbestos.[10] We affirm the decision of the board.

As noted earlier, the commissioner has the power and duty of determining the facts, and review of those factual determinations is limited. See *Gibson* v. *Keebler Co.,* 37 Conn. App. 392, 394–95, 655 A.2d 1172 (1995). While

---

[8] As stated in *Brown* v. *Blauvelt,* supra, 152 Conn. 274, the treating physician exception to the hearsay rule is "the exception which allows a physician to testify to his opinion even though it is based . . . on statements made to him by a patient for the purpose of obtaining from him professional medical treatment or advice incidental thereto."

[9] Under this exception, "[t]he words and acts of a party-opponent are generally admissible against him under the admission exception. See *O'Brien* v. *John Hancock Mutual Life Insurance Co.,* 143 Conn. 25, 29–30, 119 A.2d 329 (1955) . . . ." (Citations omitted.) C. Tait & J. LaPlante, Connecticut Evidence (2d Ed. 1988) § 11.5.1.

[10] In its opinion, the board made reference to *Balkus* v. *Terry Steam Turbine Co.,* 167 Conn. 170, 355 A.2d 227 (1974). In that case, our Supreme Court noted that the principles of judicial review in workers' compensation cases, while not governed by the Uniform Administrative Procedures Act (UAPA), are consistent with the principles in General Statutes (Rev. to 1972) § 4-183 (g) of the UAPA. Id., 173 n.3. Section 4-183 (g) provided that "[t]he court may reverse or modify the [agency] decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are . . . (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record . . . ." The court explained that substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' . . . 'Mere uncorroborated hearsay . . . does not constitute substantial evidence.' " (Citations omitted.) *Balkus* v. *Terry Steam Turbine Co.,* supra, 178 n.6.

workers' compensation commissioners are not " 'bound by the ordinary common law or statutory rules of evidence or procedure, [they] shall make inquiry in such manner, through oral testimony or written and printed records, as is best calculated to ascertain the substantial rights of the parties and carry out justly the spirit of this chapter.' " *Balkus* v. *Terry Steam Turbine Co.*, 167 Conn. 170, 177, 355 A.2d 227 (1974). No case under the Workers' Compensation Act should be finally determined when this court is of the opinion that through inadvertence or otherwise the facts have not been sufficiently found to render a just judgment. *DeBarros* v. *Singleton*, supra, 21 Conn. App. 110.

"[M]atters which bar a recovery or diminish a recovery are ordinarily required to be proved by the employer." *Dombrowski* v. *Jennings & Griffin Co.*, 103 Conn. 720, 729, 131 A. 745 (1926). Here, the defendants had the burden of proving facts sufficient to support the apportionment of the plaintiff's award. The evidence on which the defendants relied for this purpose consisted of three medical reports. The first report was an admission note from Lawrence and Memorial Hospital dated April 30, 1983. It states that "[t]he patient had worked at Electric Boat for upwards of twenty to twenty-five years and prior to that worked in a shipyard at Quincy, Mass. He has had no other occupational exposures to other agents than asbestos." The second report was a discharge summary from Boston University Medical Center dated May 24, 1983. It states that "twenty-five years ago, [the decedent] began working in close contact with asbestos in [a] submarine base in Conn. and Bethlehem Steel in Quincy for ten years prior to admission." The third report was a letter from Balmes, dated May 29, 1980. It states that "[t]he [decedent's] long history of working in ship-

yards—twelve years at Bethlehem Steel's Quincy yard (1940-1952) and twelve more years at Electric Boat (1952-1964)—has caused [him] to be exposed to a considerable amount of asbestos."

The board held that this evidence was not sufficient to provide the necessary evidentiary support for a finding of out-of-state occupational exposure. The board noted that there was no testimony regarding the type of work done by the decedent while employed by the Bethlehem Steel Company, and that none of the medical reports states the source of information regarding the alleged asbestos exposure in Massachusetts. The board then reversed the commissioner's apportionment of benefits. As noted earlier in this opinion, our scope of review of the actions of the board is limited. The decision of the board must be " 'correct in law, and it must not include facts found without evidence or fail to include material facts which are admitted or undisputed.' " *Borent* v. *State*, supra, 33 Conn. App. 499. We affirm the decision of the board that the defendants failed to meet their burden of proving facts sufficient to support apportionment of the plaintiff's award.[11]

The judgment is affirmed.

In this opinion the other judges concurred.

---

[11] In view of our decision, we need not address the plaintiff's argument that the Workers' Compensation Act does not permit a reduction of benefits where the last asbestos exposure occurred in Connecticut with a Connecticut employer and where the liability of the defendants is joint and several.